**In re Freddie MUTSCHLER and Marlys Mutschler, d/b/a Mutschler Farms, Debtors.**

**Bankruptcy No. 83–05004.**

United States Bankruptcy Court, D. North Dakota.

Nov. 14, 1984.

George E. Duis, Fargo, N.D., for debtors.

John Saunders, Minneapolis, Minn., for John Deere Co.

Jay Carlson, Fargo, N.D., for Creditors Committee.

William P. Westphal, Minneapolis, Minn., U.S. trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on an Application for administrative expense filed by John Deere Company on February 21, 1984. John Deere, by its Application, seeks treatment as a superpriority administrative expense claimant under section 503(b) and section 507(b) of the Code. The Debtors and the Unsecured Creditors Committee object to the Application. Hearing on the Motion was held on October 2, 1984.

## FINDINGS OF FACT

John Deere's claim stems from a series of five (5) retail installment sales made by John Deere to the Debtors wherein John Deere retained security interest in various items of farm equipment. As of January 1983, there was an outstanding balance remaining to John Deere on the five (5) retail installment contracts of $186,232.52, and in May of 1983, an action was commenced for relief from stay. After an answer had been interposed, John Deere and the Debtors arrived at a stipulated resolution of the case. The Debtors, wishing to retain the equipment, signed a document entitled "Stipulation". This Stipulation was filed in the adversary case but not in the main Chapter 11 file. No notice was given to the creditors, and no one was present at the hearing except the parties to the adversary proceeding.

By the terms of the Stipulation, it was agreed that: 1) As of February 20, 1983, the total delinquency was $74,827.37; 2) As of February 20, 1983, the total payoff balance on the contract was $164,020.98. The Stipulation in Paragraph 10 stated that the wholesale value of the equipment was $136,650.00 with a retail value between $160,000.00 and $180,000.00. There is no indication whether this value was as of the date of the Stipulation or as of February 20, 1983. Because the other amounts are specified as being calculated as of February 20, 1983, the Court must assume that it was the intention of the parties that the equipment values would be similarly valued as of February 20, 1983. The agreement further specified that as adequate protection, the Debtors would make annual payments commencing in June of 1983 and continuing until November 1987 when the accrued balance would be paid off. The payments required as adequate protection constituted an extension of the original installment contracts with the total of all six (6) payments being $243,603.07 including accrued interest. The Stipulation provided that failure to make the required payments would result in a lifting of the stay. The Stipulation was approved by Order of the Bankruptcy Court entered June 21, 1983, with the Stipulation then becoming a part of the adversary case.

The first payment required under the terms of the Stipulation was a sum of $15,000.00 payable in June 1983. The Debtors made this payment. The second payment due in November 1983 of $45,631.52 was missed, resulting in the equipment's repossession by John Deere in January of 1984 with ultimate sale at public auction in March of that year for a total price of $146,700.00. After auctioneer's expenses of $8,802.00, John Deere received net proceeds of $137,898.00. The payoff balance on the contracts as of January 1, 1984, was $168,928.81, leaving a deficiency of $31,030.81.

The equipment was used by the Debtors during the 1983 season, and it is claimed by John Deere that such use was an actual and necessary expense of preserving the estate and that the stipulated adequate pro-

tection payments are an accurate reflection of the cost of using said equipment. John Deere claims the sale deficiency of $31,030.81 as an administrative expense with priority over all other administrative expenses pursuant to section 507(b). This sum, it asserts, represents the loss occasioned as a result of the Debtors' breach of the Stipulation for adequate protection; a loss it would not have incurred if the adequate protection payment had been made.

The Unsecured Creditors Committee contends that the deficiency does not accurately reflect John Deere's actual loss, and if any portion of the deficiency is to be accorded administrative expense treatment, it must be reflective of the actual post-petition decrease in the value of the equipment. The Unsecured Creditors Committee finally asserts that the creditors should not bear the burden of a stipulation which, by its terms, did not contemplate a 507(b) claim and which is based upon inaccurate figures.

## CONCLUSIONS OF LAW

### 1.

Before directly addressing John Deere's Application, the Unsecured Creditors Committee's suggestion that the adequate protection stipulation somehow contained inaccurate figures and did not anticipate section 507(b) treatment will be briefly disposed of. Both John Deere and the Debtor entered into their agreement with advice of competent counsel and either during negotiations of the agreement itself or at the time of presentment to the Court for approval could have raised objections to valuations. This Court is not about to reconstruct or declare invalid stipulations for adequate protection particularly where the Debtor is sophisticated in farm machinery and was represented by counsel. Section 507(b) is a protective remedy afforded creditors in the event of the failure of adequate protection, and any party to the stipulation for adequate protection must assume that code-provided remedies will be exercised where available regardless of whether the specific remedy is mentioned in the stipulation itself. It would be virtually impossible to recite in a stipulation every possible Bankruptcy Code ramification that might develop during the pendency of an adequate protection stipulation. This Court agrees with John Deere's position that creditors must be allowed to rely on negotiated agreements. Whether the failure of that agreement gives rise to section 507(b) treatment in this instance will next be considered.

### 2.

Section 503(b)(1)(A) of the Code entitles a creditor to administrative priority for any claim representing an actual and necessary cost of preserving the estate. Section 507(b) is an adjunct to the adequate protection alternative set forth in section 361. Section 507(b) simply provides that where adequate protection has been extended to a secured creditor and later proves to be inadequate, the creditor then becomes entitled to a superpriority administrative expense claim to the extent that the proffered adequate protection was insufficient. Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor. Presumably such use is desired by the debtor and is contributing to the reorganization effort. Otherwise, the debtor would doubtless return the collateral and forego providing adequate protection. This beneficial use by the debtor is normally "paid for" by the adequate protection. Where adequate protection becomes inadequate or otherwise fails and the use nonetheless continues, section 507(b) comes into play by covering the creditor's unprotected interest by according it priority administrative expense status. The case of *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981) provides a thorough analysis of section 507(b) and its interplay with section 503(b). This case does not, as John Deere seems to suggest, stand for the proposition that administrative expense status be accorded to the full amount of the unfulfilled adequate protection without any consideration being given to the manner in which adequate protection was fashioned or without regard to section 503(b). In the case of *In re B & W Tractor*

*Co., Inc.,* 38 B.R. 613 (Bankr.E.D.N.C. 1984), the court was asked to accord administrative expense status to a missed adequate protection payment. Even in the face of a stipulation for adequate protection, said the court, such requests still must be gauged against the section 503 prerequisites.

"If a secured creditor's adequate protection is determined at a later date to be "inadequate", the creditor is given a priority ahead of all costs of administration (11 U.S.C. § 507(b)). Conversely, if, with the benefit of hindsight, an ex parte adequate protection agreement is determined to be "too adequate" the agreement should be modified or set aside." 38 B.R. at 618.

*Callister* suggests that the status accorded a creditor under section 507(b) is in absolute terms neither an administrative expense nor a guarantee of adequate protection but rather must be interpreted in light of: equitable considerations arising from the facts of each case; the rights and importance of other interests; the manner in which adequate protection was provided; and the role of the super-priority as a "backstop". *Callister,* 15 B.R. at 530.

In *Callister,* the adequate protection failed for a variety of reasons and in such complex factual situations involving a multiplicity of causes, a balance as suggested in *Callister* is perhaps necessary. The facts facing this Court are not nearly so complex. John Deere in its Application asserts that the use of the equipment during 1983 was an actual and necessary cost of preserving the estate, and the missed November 1983 adequate protection payment was an accurate reflection of that cost. With this as John Deere's stated premise for section 507 treatment, the Court must gauge that request against the requirements of section 503(b). That is to say, is the amount now requested by John Deere an actual reflection of the actual and necessary cost of preserving the estate during 1983?

It is not entirely clear from the evidence exactly what interest John Deere was seeking to have adequately protected because the values are incapable of precise calculation. For the most part, we are dealing with estimates made in May of 1983 which were not confirmed one way or the other at the October 2, 1984, hearing. We know from the Stipulation that the equipment had a retail value of $160,000.00 to $180,000.00 as of February 20, 1983. We also know from the Affidavit of John Deere's finance manager that the equipment depreciated in the range of 20–25% per year. We do not know from the evidence what the equipment was worth in January of 1983—this sum must be extrapolated from the given information. Once this is known, then we can arrive at an approximation of the value that the adequate protection was intended to preserve and whether or to what extent interest should be considered.

The Court is first of all going to use 20% as the 12-month depreciation figure. This results in 1.66% per month or approximately 3.32% depreciation from January 6, 1983, through February 20, 1983. With no precise agreed upon value for the equipment, the Debtors must be given the benefit of the Stipulation estimates. Keeping in mind the purpose of Chapter 11, any ambiguities in stipulations or agreements must be resolved in favor of the debtor. The lower retail value of $160,000.00 will be accepted as the value as of February 20, 1983. If so, then the equipment by then would have lost approximately 3.32% of value, or $3,310.00, giving us a market value as of January 6, 1983, of $163,310.00. An assumed 20% depreciation over the 12 months of 1983 would be $32,662.00, leaving a value of $130,648.00 as of January 1984. From the facts, however, the equipment did not suffer a loss of value to the extent projected. The $146,700.00 received at the March 1984 auction sale is the best indicia of what the equipment was actually worth in January 1984. Thus, rather than losing a projected $32,662.00, the equipment lost only $16,610.00 of value. It was this value which John Deere would have a right to have protected through a superpriority lien to the extent that any promised adequate protection failed to protect that interest.

As an undersecured creditor, however, John Deere was not entitled to adequate protection for post-petition interest otherwise available under section 506(b). Section 507(b) status is available only to the extent that agreed upon adequate protection payments were insufficient. John Deere did receive a $15,000.00 adequate protection payment in 1983 which, when applied against the actual loss and value of $16,610.00, leaves $1,610.00 as an uncovered loss entitled to superpriority administrative expense status. Accordingly,

IT IS HEREBY ORDERED that the administrative expense request of John Deere Company is allowed in the amount of $1,610.00.