**In re Anton B. BECKER and Elizabeth A. Becker, Debtors.**

**Bankruptcy No. BKY 3–83–453.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 21, 1985.

John D. Saunders, Minneapolis, Mn., for John Deere Co.

Richard Nadler, St. Paul, Mn., for debtors.

**ORDER**

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on application by John Deere Company for a superpriority administrative expense pursuant to 11 U.S.C. § 507(b). John Saunders appeared representing John Deere Company (Deere). Richard Nadler appeared representing the Debtors. Robert Neill, Chapter 7 trustee, appeared pro se. Based on the file, records, evidence and briefs of counsel, the Court makes this Order pursuant to the Rules of Bankruptcy Procedure.

**I.**

Debtors filed for relief under 11 U.S.C. Chapter 11 on March 14, 1983. At that time, Deere held a claim against the estate based on secured notes having a total balance of $46,096.47. The following collateral secured the obligation: one John Deere 148 Loader, Serial No. 28703; one John Deere 660 Manure Spreader, Serial No. 60001071; one John Deere 235 Disk, Serial No. 13099; one John Deere 7000 Planter, Serial No. 54727; one John Deere RG Cultivator, Serial No. 1829; one John Deere 430 Rotary Hoe, Serial No. 65356; one John Deere 214 Lawn Tractor, Serial No. 69773; one John Deere 47 Mower; one John Deere 1210A Grain Cart; and one John Deere 2700 Plow.

On May 18, 1983, Deere filed an adversary proceeding for relief from the automatic stay for lack of adequate protection of its position. According to the Debtors, Deere alleged in an affidavit filed with the complaint that the collateral then had a value of $46,400.00.[1] The adversary pro-

1. The adversary file has long since been closed and was not available at the hearing. Apparently, it is in storage in Chicago. At the hearing on application for superpriority expense, Deere's

ceeding was resolved by stipulation of the parties which was approved by Order of the Court on August 25, 1983. Neither the stipulation nor the Order approving it placed any valuation on the collateral.

The terms of the stipulation provided for adequate protection payments from the Debtors of $5,000.00 on August 1, 1983, $5,000.00 on November 1, 1983, and $10,-000.00 on August 1, 1984. The first two payments were made to Deere, but the Debtors defaulted on the $10,000.00 payment due August 1, 1984. On September 10, 1984, pursuant to the terms of the stipulation, Deere obtained relief from the stay to repossess the collateral. The case was converted to a Chapter 7 on September 5, 1984.

Deere sold most of the equipment following repossession and has now applied to the Court for allowance of a superpriority administrative expense pursuant to 11 U.S.C. § 507(b) in an amount it claims to have suffered due to failure of the adequate protection provided by the debtor-in-possession trustees. Hearing on the application was held on June 25, 1985.

Deere's witness, Wayne Eisenberg, testified at the hearing that after application of the August and November 1983 adequate protection payments to accrued interest and debt reduction, the value of its claim on the date of repossession was $43,556.72. He testified that the value of the collateral recovered was, on that date, $35,380.77 and that a $2,705.70 expense was incurred for needed repairs before resale. Finally, Mr. Eisenberg testified that $2,000.00 in attorney's fees expense was incurred by Deere in connection with protecting its interests post-petition in the collateral. Accordingly, Deere claims a superpriority administrative expense in the amount of $12,881.65 due to failure of the adequate protection provided based on the following calculation: [2]

| Debt Balance on Repossession | $43,556.72 |
| Equipment Repair | 2,705.70 |
| Attorney's Fees | 2,000.00 |
| | 48,262.42 |
| Less Value of Collateral | –35,380.77 |
| Total Superpriority Expense Claimed | $12,881.65 |

The Debtors presented no testimony at the hearing regarding valuation of the collateral as of any time relevant to the issue. In their filed memorandum, however, they argue that their report to the trustee had valued it at $29,700.00.[3]

The Debtors object to allowance of a superpriority administrative expense in favor of Deere, claiming: (1) the stipulation does not specifically provide for a superpriority treatment in the event of failure of the adequate protection provided; (2) that Deere was, on the date of the petition, undersecured and, therefore, it is not entitled to a superpriority expense for post-petition interest; (3) Deere's actual loss is speculative; and (4) Deere failed to present evidence sufficient to sustain its claim regarding attorney's fees. The Chapter 7 trustee joins in these objections. Finally, the Debtors argue that to the extent a superpriority administrative expense might be allowed, it should not be given priority over the Debtors' attorney's fees previously allowed in the case, but as yet, unpaid.

## II.

A creditor's right to obtain superpriority administrative expense is governed by 11 U.S.C. § 507(b). This section grants superpriority status to a secured creditor when there is a failure of the adequate protection provided by the trustee under §§ 362, 363 or 364. Section 507(b) reads:

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate

witness (not same individual who had given the affidavit) testified that the value of the equipment was on the date of the petition $47,600.00.

**2.** In its application papers filed, Deere requested a superpriority expense for only the amount of the defaulted payment due pursuant to the stipulation, $10,000.00. Counsel for Deere argued

at the hearing, however, that Deere is entitled to the amount of the actual loss suffered in its position.

**3.** No attempt was made at the hearing to place the report in evidence and the memorandum does not specify when it was issued or to what date the value applies.

protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b) (1979 and supp. 1984) Section 507(b) supplements the parties' own determination of what is necessary to shield a creditor from loss during pendency of the case while the estate retains possession and control of the collateral. It is an attempt to codify "a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' ... may later prove inadequate". *In re Marine Optical, Inc.,* 10 B.R. 893, 894 (D.Mass.1981). It is not necessary for a creditor to specifically bargain for § 507(b) protection in an agreement for adequate protection in order to later be accorded superpriority treatment upon its failure. The absence of a specific provision in the stipulation in this case allowing Deere to claim a superpriority expense upon failure of the adequate protection provided, does not now bar Deere from making the claim.

Debtors rely on *In re Mutschler,* 45 B.R. 494 (Bankr.N.D.1984) to support their position that Deere, as an undersecured creditor, is not entitled to post-petition interest as part of a superpriority administrative expense. However, Deere presented evidence at the hearing that it was fully secured on the date of the petition. Its witness testified that the value of the collateral was, at that time, $47,600.00. The amount owed on the debt was $46,096.47.

■ No credible contrary evidence was presented by the Debtors or the Chapter 7 trustee. The affidavit that the Debtors claim Deere filed with its adversary proceeding in 1983 is not evidence of value in this proceeding.[4] At best, in an appropriate situation, the affidavit might be used for impeachment purposes. But the witness at the hearing was not the author of the affidavit. Aside from that, according to the Debtors' memorandum, the affidavit valued the collateral at the date of the petition in the amount of $46,400.00. Even if that value be accepted, Deere was fully secured.

The Debtors' allusion in their memorandum to their report to the trustee valuing the collateral at $29,700.00 is not evidence either, regardless of what date might be related to the value stated. The report itself was not offered at the hearing and would have been inadmissible, absent the Debtors' testimony. The Debtors did not appear at the hearing.

■ Based upon the evidence and testimony taken at the hearing, the Court concludes that Deere was fully secured on the date of the petition and accordingly, it is entitled to include interest at the contract rate in the calculation of loss suffered by failure of the adequate protection provided for purposes of determining the amount of its superpriority entitlement.[5]

Deere's actual loss due to failure of the adequate protection provided, exclusive of attorney's fees, was clearly shown to be $10,881.65.[6] The amount owing on the

---

**4.** The affidavit itself could not have been evidence in the adversary proceeding either, had the issue been joined for determination upon hearing.

**5.** Even if Deere had been an undersecured creditor on the date of filing, it would not be precluded from a superpriority administrative expense calculated based upon its opportunity lost by forbearance from realization on its security. In this case, that loss would be measured by interest on the allowed amount of its secured claim, however, not necessarily at the contract rate.

**6.** The evidence is insufficient to sustain Deere's claim that it suffered loss in the amount of $2,000.00 attorney's fees due to failure of the adequate protection provided. No itemized fee statement has been furnished the Court to enable an analysis and determination of what fees, if any, might properly be allowed in the calculation of a superpriority administrative expense under § 507(b).

debt was, on the date of repossession, the sum of $43,556.72; it expended $2,705.70 for repairs necessary to make the collateral saleable; and the value of the collateral with the repairs was, on the date of repossession, $35,380.77.[7]

The remaining question is whether Deere is entitled to a superpriority administrative expense for its proved, actual loss due to failure of the adequate protection provided, or whether it is limited to the extent of the bargained-for adequate protection payment defaulted upon. If allowed the actual loss, the amount is $10,881.65. If limited to that bargained for in the stipulation, the amount is the failed $10,000.00 payment due August 1, 1984. The Court concludes that Deere is entitled to $10,881.65.

In the case of *In re Callister*, 15 B.R. 521 (Bankr.Utah 1981), the Court determined that while the scope of § 507(b) protection is not in all respects limited by the parameters of a bargained-for stipulation, the stipulation should control as to specific areas of loss contemplated and forseeable by it. Accordingly, that Court allowed superpriority expense for the unexpected loss of uninsured collateral by fire and the diminished value of collateral due to unanticipated and unforeseeable market forces. But where the stipulation provided for payments of $4,928.00 to cover ordinary depreciation and the debtor defaulted in the payment of $2,464.00, only the amount of the default was allowed, even though actual, ordinary depreciation was shown at the superpriority expense hearing to be $6,346.00 during the relevant period.

In the case of *In re Mutschler, supra,* the North Dakota Court adopted a less restrictive view expressed by the North Carolina Court in *In re B & W Tractor Co., Inc.,* 38 B.R. 613 (Bankr.E.D.N.C.1984). Those cases hold that it is the actual loss (which meets the prerequisites of § 503)

sustained due to failure of adequate protection extended, that determines the amount allowed as a superpriority administrative expense under § 507(b), regardless of what adequate protection is bargained for in a stipulation. Accordingly, under the *Mutschler* view, upon application for § 507(b) status, a creditor might be allowed more or less than the stipulation provides. In *Mutschler,* the creditor was allowed substantially less.

Other administrative claimants and unsecured creditors are rarely parties to adequate protection stipulations and, in the absence of their participation, should not be bound by them to the extent that superpriority administrative expense status can be predetermined by those agreements. The Court is aware of no authority, legal or equitable, that would allow a debtor-in-possession and creditor to agree among themselves to accord the creditor, at the expense of other interests in the case, more than what § 507(b) provides for.

On the other hand, in the absence of: a provision in a stipulation specifically limiting the amount a creditor may claim as a superpriority administrative expense under § 507(b); or, a provision which in some manner acknowledges that the adequate protection provided constitutes the full adequate protection to which the creditor is entitled;[8] there seems to be no compelling reason why the creditor should be held to have bargained away or compromised its full rights under the statute simply by agreeing, without imposition of a court order under protest, to accept adequate protection payments in a stated amount.[9]

That is not to say, however, that a creditor will never be bound on application for superpriority status regarding any terms of an earlier adequate protection stipulation that are relevant to calculation of the allowed superpriority amount. For instance, a creditor might be bound by an

---

7. The Court accepts Deere's testimony regarding valuation as of the date of repossession. No contrary evidence was presented by the Debtors or trustee.

8. No such provisions are in the stipulation involved in this case.

9. Undoubtedly, the amount of adequate protection imposed upon an unwilling creditor by Court order would not, in itself, limit the creditor's later claim for superpriority administrative expense upon failure of the adequate protection provided for in the order.

agreed-upon valuation of collateral as it relates to the date of the petition or stipulation. In this case, the parties did not agree on valuation of the collateral in the stipulation.

Based upon the foregoing reasons, the Court concludes that Deere is entitled to a superpriority administrative expense pursuant to 11 U.S.C. § 507(b) in the amount of $10,881.65, which is its actual loss proved.

## III.

■ Finally, Debtors' attorney objects to granting John Deere a superpriority administrative expense which would have priority over his attorney's fees. He relies on the reasoning of Judge Mabey's decision in *In re Callister, supra.* The *Callister* case involved a situation where debtor's attorney received interim compensation pursuant to § 331 prior to the creditor's claim for a superpriority administrative expense. The creditor asserted that if the estate funds were insufficient to satisfy all the superpriority expenses in full, the debtor's attorney should be required to return part of the compensation already received to satisfy its § 507(b) claim. Judge Mabey, rejecting the creditor's argument, ruled that the interim compensation requested under § 330 was actually allowed by the Court pursuant to its powers granted by 11 U.S.C. § 331 and not § 503(b).[10] *In re Callister, supra* at 534–535.

The instant case is distinguishable from the *Callister* case. Debtors' attorney never applied for or received interim compensation under § 331. In fact, Mr. Nadler's own fee application requests payment as an administrative expense. It reads in pertinent part: "The undersigned will move the Court for allowance for attorney's fees as *administrative expenses* in the amount of

$38,808.75 ..." *In re Becker,* (Notice of Motion and Motion for Attorney's Fees, filed March 11, 1985) (emphasis added). This Court's Order of May 3, 1985, reflects this request. The May 3 Order granting compensation to Mr. Nadler reads: "All fees and costs are subject to payment pursuant to the priority provisions of the Code for distribution."[11] *In re Becker,* slip op. BKY 3–84–453 (Bankr.Minn. May 3, 1985). Mr. Nadler's fees were granted pursuant to § 503(b)(2) and not § 331.

## IV.

IT IS ORDERED that John Deere Company is granted a superpriority administrative expense against the estate in the amount of $10,881.65 pursuant to 11 U.S.C. § 507(b). This claim shall have priority over all other administrative expenses including Debtors' attorney's fees. All other requests for relief are denied.

---

10. Section 331 reads in pertinent part:
   A trustee, an examiner, a debtor's attorney, or any *professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After* notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement. 11 U.S.C. § 331 (1979 and supp.1984)

11. Mr. Nadler has appealed the May 3, 1985, Order. He did not challenge the Court's Order regarding his administrative expense priority status. *See* Statement of Issues, filed June 24, 1985.