**In re CALIFORNIA DEVICES, INC., Debtor.**

**Bankruptcy No. 587–04306 JRG.**

United States Bankruptcy Court, N.D. California.

March 28, 1991.

Randolph L. Howard, Stephanie C. Tramz, Frandzel & Share, A Law Corp., San Francisco, Cal., for Technology Funding Secured Investors I.

Michelle K. Rubin, Palo Alto, Cal., for Chapter 7 Trustee.

## OPINION

JAMES R. GRUBE, Bankruptcy Judge.

## I. INTRODUCTION.

Before the Court is the motion of Technology Funding Secured Investors I ("TFSI") for the allowance and payment of a claim which it asserts is a superpriority administrative claim pursuant to 11 U.S.C. § 507(b). The Chapter 7 Trustee ("Trustee") has objected to the motion on the ground that the claim of TFSI should not be classified as a superpriority claim. The

Trustee argues alternatively that if the Court concludes that TFSI has a superpriority claim, that claim, which arose in the preceding Chapter 11 case, should be subordinated to the Chapter 7 administrative claims. For the reasons stated hereinafter, the first objection of the Trustee is overruled, and the second objection of the Trustee is sustained.

## II. BACKGROUND.

California Devices, Inc. ("Debtor") filed a Chapter 11 petition August 10, 1987. According to the Debtor's Schedule A–2, filed September 29, 1987, the Debtor owed TFSI $1,512,214.00 at the time of the filing. The value of the collateral securing the debt to TFSI was listed as $2,000,000.00. In November 1987 the Debtor and TFSI stipulated to adequate protection payments in the amount of $15,900.00 per month, which were made for the months of October 1987 through March 1988. Subsequently, the Debtor and TFSI stipulated to further adequate protection payments of $17,500.00 for April 1988 and $20,000.00 for May 1988. Both stipulations were made without prejudice to future claims being asserted by TFSI.[1] Neither stipulation specifically provided that further claims of TFSI would have a section 507(b) superpriority. Thereafter the business failed, and TFSI obtained relief from the automatic stay on September 14, 1988. At that time, the amount owed TFSI had increased to $1,574,839.00. The collateral was ultimately liquidated, and TFSI netted $1,209,346.14 after the deduction of the liquidator's commission from the sale price. TFSI alleges that it is owed an additional $604,524.40 on its secured claim after offsetting the proceeds of the sale of the collateral and the adequate protection payments made by the Debtor. As TFSI alleges it was fully secured when the petition was filed, it is this amount which TFSI seeks to recover as a section 507(b) superpriority claim.[2]

---

1. Paragraph 7 of Stipulation for Interim Adequate Protection and Order Thereon filed November 16, 1987, and Paragraph 7 of Second Stipulation for Interim Adequate Protection of April 18, 1988. The Second Stipulation was apparently never filed with the Court.

2. The amount of the claim may be in dispute as suggested by the Opposition to Motion for Allowance and Payment of Superpriority Administrative Claim, filed December 5, 1990, at page 3. This issue is not presently before the Court.

On September 20, 1989, a year after TFSI was authorized to liquidate its collateral, the case was converted to Chapter 7 and the Trustee was appointed.

## III. THE STATUTORY BASIS OF A SECTION 507(b) CLAIM.

11 U.S.C. § 507 states in pertinent part: "(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title . . .

(b) If the trustee . . . provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor, and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title . . . then such creditor's claim . . . shall have priority over every other claim allowable under such subsection."

■ The purpose of section 507 is to "[establish] a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' . . . may later prove inadequate." *In re Marine Optical, Inc.,* 10 B.R. 893 (B.A.P.D.Mass.1981). In order for a claim to have superpriority status under section 507, the claim must be allowable as an administrative claim under section 503, and adequate protection must have been provided which has later proven to be inadequate. Thus, the first question that must be addressed is whether the claim of TFSI is allowable as an administrative claim under section 503(b).

Section 503(b) states in pertinent part: "(b) [T]here shall be allowed administrative expenses . . . including—

(1)(A) the actual, necessary costs and expenses of preserving the estate . . . "

The Debtor's use of TFSI's collateral was an essential aspect of its efforts to reorganize, and as such the use of the collateral was an actual and necessary cost of preserving the estate. Therefore, the claim of TFSI is allowable as an administrative claim under section 503(b)(1)(A).

The second question that must be addressed is whether adequate protection was provided which has later proven to be inadequate. It is not in dispute that adequate protection was provided to TFSI pursuant to the stipulation between TFSI and the Debtor. Assuming arguendo that there was an equity cushion of approximately $500,000.00 in the collateral at the outset of the filing of the Chapter 11 case, the adequate protection payments later proved to be inadequate, as evidenced by the fact that there was an alleged shortfall of $604,524.40 on the secured claim of TFSI after the collateral was liquidated.[3] It would therefore appear that the claim of TFSI meets all of the requirements of a section 507(b) superpriority claim.

However, the Trustee has objected to the classification of the claim of TFSI as a superpriority on the basis that the amount of the adequate protection payments was mutually agreed upon by the parties, and the Debtor timely and fully performed under the agreement. As a result, the Trustee contends that TFSI by its own actions is responsible for the failure of adequate protection, and should not be permitted to collect its shortfall on a superpriority basis.

## IV. THE CONFLICTING CASE LAW ON THE APPLICATION OF SECTION 507(b).

There are two distinct lines of authority which have developed on the question of whether the scope of section 507(b) protection extends to a creditor who has stipulated to adequate protection payments.

The seminal case supporting the Trustee's position is *In re Callister,* 15 B.R. 521 (D.Utah 1981), *appeal dismissed,* 673 F.2d 305 (10th Cir.1982). In *Callister* the court held that the operation of section 507 is subject to equitable considerations, and that the application of the statute turns on the facts of a given case. *Id.* at 530. The court stated: "[T]he superpriority was in-

---

**3.** The Trustee does not dispute that there has been a shortfall, although there may be a dis-

agreement as to the amount of the shortfall, as previously noted.

tended to recapture value *unexpectedly lost* during the course of a case...." *Id.* (emphasis added). The court then interpreted the "unexpected loss" principle to deny superpriority status to a loss that is "readily foreseeable" and found that a loss attributable to normal market forces is foreseeable. *Id.* at 533. On that basis the court held that the secured creditor would not be allowed a section 507(b) superpriority claim for losses that had occurred due to a "gross miscalculation" in the stipulated amount of adequate protection payments, *id.* at 532, or the depreciation of the collateral above and beyond the bargained for amount, *id.* at 533.

*Callister* has been followed by *In re Cheatham*, 91 B.R. 382 (E.D.N.C.1988). The *Cheatham* court agreed with *Callister* that the purpose of section 507(b) is to compensate a creditor for the failure of stipulated adequate protection only when the loss is due to "some unforeseeable, highly unusual circumstance such as casualty due to fire or flood" or "the result of a sudden and swift change in market forces." *Cheatham*, 91 B.R. at 386. The court stated:

> "In situations involving the determination of adequate protection by the consent of the parties, the parties themselves, and especially the creditor who is in the dominant position, assumes the risk that adequate protection will later turn out to be 'inadequate.'"

*Id.* at 387. On that basis, the court granted superpriority status to the claim of the secured creditor only for an unexpected loss in the value of the collateral, and not for ordinary losses caused by depreciation of the collateral.

TFSI relies on *In re Becker*, 51 B.R. 975 (D.Minn.1985), in support of its position that section 507(b) applies to the full amount of its administrative claim. The *Becker* court held that the scope of section 507(b) extends to any proven, actual loss in a situation where adequate protection fails.[4] The *Becker* court cited *In re B & W Tractor*, 38 B.R. 613 (E.D.N.C.1984), and

*In re Mutschler*, 45 B.R. 494 (N.D.1984), for the proposition that the purpose of section 507(b) is to compensate for all losses suffered by a creditor, regardless of whether or not adequate protection payments were bargained for by the parties. *See also In re Nordyke*, 43 B.R. 856 (D.Or. 1984); *In re Colter*, 53 B.R. 958 (D.Colo. 1985).

This Court concludes the holding of *Becker* is the better view. The question of adequate protection generally arises at the very inception of a Chapter 11 case as a result of the prohibition against the use of cash collateral. 11 U.S.C. § 363. In order to maintain the operation of the business, adequate protection for the secured creditor must be immediately determined and approved by the court. While the debtor can seek authorization to use cash collateral over the objection of the secured party, in most cases a stipulation for adequate protection is negotiated by the parties and then presented for approval.

The *Callister* approach discourages the secured creditor from cooperating in the reorganization process. If the judge's determination of adequate protection in a contested hearing turns out to be inadequate, the creditor's superpriority is protected, whereas the protection is lost when a stipulation is negotiated. This result rewards an obstinate and uncompromising creditor and penalizes a cooperative creditor. Cooperation of creditors is often critical to the success of a reorganization. At the time of the filing, debtors are often not in a position to present sufficient evidence to establish the amount of adequate protection payments over the objections of the secured creditor. It is the negotiated adequate protection agreement which most often advances the reorganization effort. Such agreements should be encouraged.

In *Cheatham*, the court raised the concern that to allow a creditor a superpriority when stipulated adequate protection payments fail might have the effect of promoting collusion between debtor and creditor; the parties could intentionally set the value

---

**4.** The Tenth Circuit has characterized the holding of *Becker* as the majority view in *In re*

*Blehm Land & Cattle Co.*, 859 F.2d 137, 140–41 (10th Cir.1988).

of the collateral in excess of its true value, with a resulting windfall superpriority recovery to the creditor when the protection later proved inadequate. *Id.* at 387. The potential for abuse does exist, but the risk is not substantial and is outweighed by the chilling effect the *Callister* approach would have on negotiations between debtors and creditors.

Therefore, the Court concludes that TFSI is entitled to a section 507(b) superpriority claim against the Debtor for the full amount of its claim.[5]

## V. SUBORDINATION TO CHAPTER 7 EXPENSES.

█ The Trustee argues alternatively that even if TFSI has a section 507(b) claim against the Debtor, that claim should be subordinated to the administrative claims of the Chapter 7 case. The Trustee cites *In re MacNeil,* 102 B.R. 766 (9th Cir. BAP 1989) in support of this proposition. The Ninth Circuit has vacated and remanded that case for further factual determination in *In re MacNeil,* 907 F.2d 903 (9th Cir. 1990), without comment on the legal issues.

The Court has not found any reported decisions on this precise issue. However, it is well settled under section 726 that administrative expenses of a superceding Chapter 7 case have priority over the administrative expenses of the preceding Chapter 11 case.

> "Whatever the nomenclature, superceding Chapter 7 administrative expenses are entitled to be paid in full before priorities of the next rank—administrative expenses incurred in the superceded Chapter 11 case—are paid in full or in part ..."

*Matter of Crisp,* 92 B.R. 885, 890 (Bankr. W.D.Mo.1988), citing *In re Energy Co-op., Inc.,* 55 B.R. 957, 968 (Bankr.E.D.Ill.1985). In other words, superceding Chapter 7 administrative expenses constitute a type of superpriority.[6]

As between two competing superpriorities, the Court is convinced that policy reasons favor granting the greater priority to the Chapter 7 administrative expenses.

Allowing a Chapter 11 section 507(b) claim first priority would make any knowledgeable trustee hesitant to administer a converted case. In the present case, the collateral had already been liquidated at the time of conversion, but often the collateral remains in the debtor's possession and is thereafter liquidated by the trustee for the benefit of the estate or released to the secured creditor. As a result, the existence or size of a superpriority claim often cannot be determined at the outset of the Chapter 7 case, placing the trustee at substantial economic risk. Protecting the trustee's administrative expense encourages a complete administration of the estate for the benefit of not only the secured creditor but for the benefit of creditors generally.[7]

Therefore, the Court concludes that the administrative expenses of the Chapter 7 case have priority over all Chapter 11 ad-

---

5. The Court notes that although the stipulation between the Debtor and TFSI did not specifically provide that any failure of adequate protection payments would result in a superpriority for the claim of TFSI, this omission is not fatal. *See, e.g., In re Becker,* 51 B.R. 975 (D.Minn. 1985): "It is not necessary for a creditor to specifically bargain for § 507(b) protection in an agreement for adequate protection in order to later be accorded superpriority treatment upon its failure." *Id.* at 979.

6. *See In re IML Freight, Inc.,* 52 B.R. 124, 131 *et seq.* (Bankr.D.Utah 1985) for a history of the administrative expense superpriority in bankruptcy. *See also In re Granada, Inc.,* 88 B.R. 369, 373 (Bankr.D.Utah 1988), for a description of the three types of superpriorities within the Bankruptcy Code.

7. *See In re Roundwood Corp., Inc.,* 72 B.R. 296, 299 (Bankr.D.S.C.1987); *In re J.R. Research, Inc.,* 65 B.R. 747, 751 (Bankr.D.Utah 1986); *In re Codesco, Inc.,* 18 B.R. 225, 227 (Bankr.S.D.N.Y.1982). "The superpriority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superceding cases." *Codesco,* 18 B.R. at 227. *See also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 186–187·(1977); 1978 U.S.Code Cong. & Admin. News, 5787, 6147: "Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate."

ministrative expenses, including superpriority claims under section 507(b).[8]

## VI. CONCLUSION.

Based on the foregoing, the Court concludes that the claim of TFSI shall be classified as a section 507(b) claim despite the fact that the adequate protection payment amounts were stipulated to by the parties. Therefore, the first objection to the claim of TFSI by the Trustee is overruled.

The Court further concludes that the section 507(b) claim of TFSI shall be subordinated to future Chapter 7 administrative claims. Although the claim of TFSI shall have a superpriority, it shall be paid only after all Chapter 7 administrative claims have been satisfied, and pending resolution of any potential dispute with the Trustee over the amount of the claim. Therefore, the second objection of the Trustee is sustained.

---

**8.** The Court notes that *Collier on Bankruptcy* has taken the opposite view. *See* 3 *Collier on Bankruptcy* ¶ 507.05 at pp. 507–50—507–51. *Collier* has cited no authority for the proposition that a section 507(b) claim enjoys a "super"-superpriority under the Code; the *Collier* analysis is based solely on its own interpretation of the interrelation of sections 507(b), 726(b) and 507(a)(1), which this Court declines to follow.