**In re MOULTON EXCAVATING,
a Utah Corporation, Debtor.**

**Bankruptcy No. 87A–02805.**

United States Bankruptcy Court,
D. Utah, C.D.

July 15, 1992.

Mark Howard, Salt Lake City, Utah, for the U.S., I.R.S.

Jack Reed, Larsen & Stewart, Salt Lake City, Utah, for HHI.

Stephen Lewis, Asst. Atty. Gen., Salt Lake City, Utah, for the Utah State Tax Com'n.

## MEMORANDUM OPINION AND ORDER

JOHN H. ALLEN, Bankruptcy Judge.

A hearing was held August 24, 1989, on the Motion for Allowance of Superpriority Claim filed by the Internal Revenue Service. The Court took the matter under advisement and now issues the following Memorandum Opinion and Order.

The Internal Revenue Service (IRS) has requested a superpriority claim in this case pursuant to 11 U.S.C. § 507(b). This su-

perpriority request results from a delinquency of $200,000 in agreed adequate protection payments.

The debtor had previously negotiated with the IRS for the use of cash collateral. A stipulation for such use was approved by Order Authorizing Use of Cash Collateral entered June 22, 1987. The IRS agreed to the use of cash collateral after it was granted a replacement lien in post-petition cash collateral assets. In addition to the lien, the debtor agreed to make minimum monthly adequate protection payments to the IRS of $25,000, starting July 1, 1987. It is the delinquency of these payments that form the basis for the motion.

The trustee of this Chapter 7 case, as a result of an auction of assets and various other collection procedures, now holds an approximate current balance of $290,000. Since further collection activities seem speculative at best, this sum probably represents the total amount available for distribution to creditors.

Two objections to the motion were filed, one by the State of Utah and another by HHI. The State of Utah objected to superpriority allowance for unpaid post-petition federal tax liabilities and HHI objects since the granting of the requested priority would result in insufficient assets to pay administrative claimants. The administrative claimants include wage claimants to whom HHI might be liable under the Davis–Bacon Act.

Perhaps the greatest deterrent to successful interim operation by a debtor hoping to succeed in formulating a reorganization plan is the provision of Section 363(c)(2) which prohibits the use of cash collateral without consent of the secured creditor or a court order. It seems certain the chief impelling reason why representatives of secured creditors obtained the legislation on the use of cash collateral was an apprehension that the debtor would spend the money in ways that made it unrecoverable. *In re Thompson,* 5 B.R. 667 (Bkrtcy. S.D.1980); *In re Heatron, Inc.,* 6 B.R. 493 (Bkrtcy.W.D.Mo.1980).

In order to facilitate the cooperation of secured creditors for the debtor's use of cash collateral, adequate protection can be given the secured creditor to guarantee against the threatened loss. 11 U.S.C. § 363(e). The legislative history of the Code indicates that the concept of adequate protection is derived from constitutional protection of property interest. It cites Supreme Court decisions giving such protection under the Fifth Amendment. *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). Further, the history in the House states that the provisions are based as much on policy grounds as on constitutional grounds. "Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for." H.R.Rep. No. 595, 95th Cong., 1st. Sess. 339 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6295.

Prior to the Code, two important cases in the Second Circuit dealt with the problem. In the first, *In re Yale Express System, Inc.,* 384 F.2d 990 (2nd Cir.1967), the court approved the granting of an administrative expense category to protect against depreciation in the value of trucks being used by the debtor. In the second, *In re Bermec Corp.,* 445 F.2d 367 (2nd Cir.1971), payments to cover the decrease on value of the asset through use of the collateral was approved as a method of adequate protection.

Assuming the necessity of providing adequate protection, one statutory method is the requirement of making periodic payments. 11 U.S.C. § 361(1). Few provisions of the entire Code can have such an important effect upon the possible success of a Chapter 11 proceeding than how the re-

quirement is applied. This section is intended not to preserve equity but to be compensatory. *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bkrtcy.Utah 1981). These periodic payments guard against the situation all too commonly experienced, not enough money to go around when a case winds down. Where a creditor receives the adequate protection to which it is entitled, but this protection, for whatever reason, proves to be inadequate, that creditor's claim for the inadequacy is given priority over every other priority claimant. Thus, the holder of a claim for failed adequate protection brushes aside all other expenses or administrative claims and stands first in line. 11 U.S.C. § 507(b). This right, to stand at the head of the line, is deemed a superpriority and is a right given certain reverence under the Code to those creditors *whose sacrifice of their collateral was meant to be a benefit to all. In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir.1988). (emphasis added)

The legal basis advanced by the objecting creditors is *In re Callister*, 15 B.R. 521 (Bkrtcy.Utah 1981) appeal dismissed, 673 F.2d 305 (10th Cir.1982), *aff'd*, 13 B.C.D. 21 (10th Cir.1984). In this case, the court conducted an extensive review of the authorities and legislative history to determine what should be included within the superpriority. For reasons not entirely clear, the decision was somewhat colored by the presence of a stipulation regarding adequate protection. But finally, the court held that interim attorneys' fees would be paid in spite of the fact that a superpriority lien had not yet been satisfied. There is a presumption, said the Court, that attorney's fees will be paid notwithstanding the existence of a superpriority. This presumption is rebuttable under appropriate equitable circumstances which the Court found not to be present in the case upon which it was ruling. It is also important to note that in the *Callister* case there were $323,122.00 in unencumbered assets. Nonetheless, it is not to be supposed that *Callister* stood for the proposition that administrative fees, such as attorney fees, should always be paid at the expense of the secured creditor. *In re IML Freight, Inc.*,

52 B.R. 124 (Bkrtcy.Utah 1985). Instead, specific circumstances can dictate the order of competing priorities. *In re California Devices, Inc.*, 126 B.R. 82 (Bkrtcy.N.D.Cal. 1991).

Under the circumstances before it, this Court is convinced there is no justification to override the Code's protection of the secured creditor. It is not this Court's mission to discourage secured creditors from cooperating in the reorganization process. A cooperative creditor more often than not is the catalyst that advances the reorganization effort. The Court is mindful that any penalization of this cooperation has the potential to produce a chilling effect on negotiation between debtor and creditors. Therefore, because of the risk it undertook, the IRS is entitled to a superpriority administrative claim as requested. IT IS ORDERED that pursuant to 11 U.S.C. § 507(b), the IRS is granted a superpriority claim in the agreed upon amount of $200,-000.