**In re SECOND TIMMON HOTEL COMPANY, LTD., Debtor.**

**Bankruptcy No. 86–1894–BKC–6P1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 18, 1988.

S.J. Zusmann, Jr., Atlanta, Ga., for debtor.

Roberta Colton, Tampa, Fla., for Bracton Corp. and Orlando Towers, Inc.

Andrea A. Ruff, Orlando, Fla., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon Bracton Corporation and Orlando Towers, Inc.'s motion for a superpriority administrative claim pursuant to 11 U.S.C. § 507(b) and Orlando Towers, Inc.'s motion for allowance of an administrative claim for payment of real and personal property taxes. An evidentiary hearing on the motions was held July 19, 1988, and upon the evidence presented, the Court enters findings of fact and conclusions of law.

## FINDINGS OF FACT

Second Timmon Hotel Company, Ltd., ("Debtor"), filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on September 11, 1986. Its principal asset is a large twin-towered convention oriented hotel in the vicinity of the Walt Disney World complex, which is commonly known throughout the Central Florida area as the Sheraton Twin Towers Hotel.

Bracton Corporation ("Bracton") is a secured creditor of the debtor, holding a first lien against virtually all of debtor's assets, including the hotel building, debtor's equipment, and accounts receivables. Orlando Towers, Inc., is the assignee of Bracton's rights pursuant to a Final Judgment of Foreclosure entered by the state court in January, 1988.

Soon after the petition was filed, Bracton filed its motion for adequate protection pursuant to 11 U.S.C. § 361. On January 15, 1987, the Court entered an order calling for monthly adequate protection payments to Bracton in the amount of $154,000.00. Of this monthly payment, $104,000.00 was allocated towards outstanding real estate and tangible personal property tax payments while $50,000 was allocated as compensation to Bracton for any decrease in the value of its collateral. The order also provided:

> Upon debtor's default on any of the provisions of Paragraph 1 herein, Bracton Corporation may provide telephonic notice of noncompliance to debtor's attorney, Lionel Silberman, or his office in his absence. Seventy-two hours from the time of such telephonic notice, Bracton may file an affidavit of non-payment with this Court setting forth the nature of the default. The filing of said affidavit shall restrict debtor's rights to use Bracton Corporation's collateral and Bracton shall thereupon be authorized to take all steps it may deem desirable to protect and secure its collateral.

The debtor defaulted under the terms of the order by failing to make the payment due August 23, 1987. Shortly thereafter, the parties entered into a Stipulation of Settlement concerning the underlying foreclosure action which was pending in state court. The Stipulation was approved by the Circuit Court for Orange County, Florida, and a Notice of Compromise was mailed to all creditors in this bankruptcy proceeding on September 4, 1987. No objections to the compromise were received.

Pursuant to the terms of that settlement, a judgment of foreclosure was entered in favor of Bracton in the amount of $52,372,080.35. However, Bracton agreed to permit debtor to redeem its collateral upon payment of $26.1 million any time prior to the scheduled foreclosure sale to be held January 4, 1988. In addition, Bracton agreed to waive the Court ordered adequate protection payments due September 9, 1987; September 23, 1987; and October 9, 1987, provided debtor resumed payment of adequate protection beginning with the October 23, 1988, payment.

Notwithstanding this agreement, the debtor continued in default and missed all

payments due through the foreclosure sale on January 4, 1988. Bracton filed its affidavit of non-payment on or about November 3, 1987, and took no further action concerning the affidavit until December 7, 1987. Nevertheless, the debtor continued to operate the hotel and to use Bracton's collateral through January 15, 1988.

On November 20, 1987, the debtor proposed an auction sale of Bracton's collateral which was objected to by Bracton on December 3, 1987. Concomitantly on December 7, 1987, Bracton moved for emergency relief from the automatic stay based upon debtor's default in making the adequate protection payments. On December 21, 1987, the Court overruled Bracton's objection and the auction was permitted to take place. No sale resulted from the auction.

Notwithstanding the Stipulation of Settlement, the debtor filed an adversary proceeding seeking to enjoin the foreclosure sale. On January 4, 1988, the Court entered an order denying debtor's motion for preliminary injunction, 82 BR 150. Orlando Towers, Inc., was the successful bidder for twenty-seven million dollars at the foreclosure sale, and on January 15, 1988, obtained title to the property.

On March 1, 1988, the Court held a confirmation hearing on the debtor's plan of reorganization. At that time, debtor announced its intention to voluntarily convert the case due to the loss of its primary asset and the resulting inability to effectuate a Chapter 11 plan. The Court entered an order dated March 2, 1988, converting the case to Chapter 7.

After obtaining title to the hotel but prior to the order of conversion, Orlando Towers paid all of the outstanding pre-petition real estate and personal property taxes due on the property as well as some $47,929.02 in post-petition delinquencies. In its § 507(b) motion, Orlando Towers, Inc., seeks to recover the amount of those payments ($490,074.90) as well as a Chapter 11 administrative expense for the missed adequate protection payments.

The evidence at the hearing shows that there has been no appreciable decline in the value of Bracton's collateral since the inception of the bankruptcy case.

## ISSUES PRESENTED

The issues presented in this case are as follows: (1) Should a secured creditor be given a superpriority claim ahead of all other creditors, including that of the Chapter 7 trustee, where there was no court error in determining the amount of adequate protection awarded but where there has simply been a default in court-ordered adequate protection payments? and (2) should a secured creditor be entitled to a superpriority administrative expense where it failed to timely move for relief from the stay after default in the adequate protection payments?

## CONCLUSIONS OF LAW

Section 361(1) of the Bankruptcy Code allows the Court to grant "adequate protection" payments in the form of periodic cash payments to an entity which holds an interest in property of the estate when the imposition of the automatic stay of 11 U.S.C. § 362 or the use of that property by the debtor-in-possession will result in a "decrease in the value of such entity's interest in such property." More specifically, the relevant portion of the statute provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payment to such entity, to the extent that the stay under 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in this value of such entity's interest in such property;

Should the court ordered "adequate protection" later prove insufficient to protect such entity's interest, § 507(b) of the Bankruptcy Code allows the entity to file a "superpriority" claim for the insufficiency ahead of all other claimants, even above that of a Chapter 7 trustee. That statute reads:

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

This Court previously determined that the appropriate level of adequate protection payments due Bracton was $154,000.00 per month. Of this amount, $104,000 was to be allocated towards payment of the real and personal property taxes while the remaining $50,000 was to be applied towards the secured indebtedness. There has been no showing that the amount of these adequate protection payments was insufficient.[1] Indeed, had the adequate protection payments been made, Bracton or its assignee would have received an offset against any potential decline in the value of its collateral of some $412,000.00.

■ In its § 507(b) motion, Orlando Towers is essentially seeking a "superpriority" administrative claim for the unpaid adequate protection payments which accrued during the period between August, 1987, and December, 1987. The Court finds a claim for these losses to be outside the scope of § 507(b).

Section 507(b) was intended to protect from error or miscalculation in the Court's judgment as to the appropriate level of adequate protection. "[W]hereas adequate protection shields the creditor in the first instance from impairment in the value of his 'interest in property,' the superpriority was intended to recapture value unexpectedly lost during the course of a case:

'It establishes a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the "indubitable equivalent" of an interest in cash collateral may later prove inadequate.' " *In re Callister*, 15 B.R. 521, 528 (Bkrptcy. D.Utah 1981), *quoting In re Marine Optical, Inc.*, 10 B.R. 893, 894 (Bkrptcy.App.D. Mass.1981). It was not intended to serve as a guarantee that the adequate protection payments will be paid.

In this case, the creditor's failure to recover the full value of its collateral was not the result of a miscalculation in the adequate protection ordered by the Court, but resulted from its own business decision not to pursue the remedies available to it. More specifically, Bracton failed to timely move for relief from the stay in order to foreclose upon the property or to file its affidavit of non-payment once the debtor missed the payment due August 23, 1987. Furthermore, Bracton went so far as to waive the missed adequate protection payments in the Stipulation of Settlement which was noticed to all creditors. Under the circumstances, it would be inappropriate to provide Bracton with a superpriority claim for losses occasioned by its own conduct. *See, In re Falwell Excavating Co., Inc.*, 47 B.R. 217, 12 C.B.C.2d 453 (Bkrptcy. W.D.Va.1985).

Finally, the Court concludes that any loss suffered by Bracton was not the result of the automatic stay. In order for a creditor to sustain a claim under § 507(b), it must prove that the loss was caused solely by the imposition of the automatic stay. *In re Callister*, 15 B.R. 521 (Bkrptcy.D.Utah 1981). As the Court recognized in *In re Alyucan Interstate Corp.*, 12 B.R. 803, 7 B.C.D. 1123, 1126 (Bkrptcy.D.Utah 1981), "not every decline in value must be recompensed. Only those which, but for the stay, could be and probably would be prevented or mitigated."

Here, there has been an insufficient showing that the debtor was damaged by the imposition of the stay. Bracton was willing to forestall foreclosure and worked

---

**1.** Bracton suggests that the value of its security interest declined by $1.2 million during the pendency of the Chapter 11 proceedings due to ordinary depreciation. The Court rejects Bracton's valuation method and finds that there has been no appreciable decline in the value of Bracton's security interest.

with the debtor to resolve their mutual problems through November, 1987. Furthermore, the evidence indicates that there has been no real decline in the value of Bracton's collateral. Indeed, a witness for the trustee went so far as to testify that the value of the hotel had actually increased due to the announcement that Universal Studios would be building a film production complex nearby. Thus, the Court can find no basis for awarding Bracton or its assignee a superpriority expense for missed adequate protection payments under § 507(b).

 As for Orlando Tower's motion for allowance of an administrative expense for payment of real and personal property taxes, the Court finds (i) that Orlando Towers is not entitled to an administrative expense due to the fact that Orlando Tower's claim exceeds the value of the interest of the bankruptcy estate in the property, and (ii) that Orlando Towers bought the property subject to and with full knowledge of the unpaid taxes and cannot now improve its position or "end run" its § 507(b) motion by filing a claim for administrative expenses.

The Court will enter an order denying both the motion for a superpriority administrative claim and the motion for allowance of an administrative expense in accordance with these findings.