## In re J.F.K. ACQUISITIONS GROUP, Debtor.

## In re 5241 EAST CORP., Debtor.

### Bankruptcy Nos. 892–80503–478, 892–81454–478.

United States Bankruptcy Court, E.D. New York.

April 29, 1994.

Rosenman & Colin, by Arthur S. Linker, New York City, for Hotels & Realty Corp.

Todtman, Young, Tunick, Nachamie, Hendler & Spizz, by Alex Spizz, Stanley Hendler, New York City, for the debtors.

### DECISION ON MOTION BY AMERICANA HOTELS AND REALTY CORP. FOR SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 507(b)

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion made by the secured creditor Americana Hotels & Realty Corp. ("Americana"), for an order: (i) fixing the value of its secured lien on property owned by J.F.K. Acquisition Group (the "Debtor") pursuant to Rule 3012 of the Federal Rules of Bankruptcy; and (ii) granting a superpriority administrative expense claim to Americana pursuant to § 507(b) of the Bankruptcy Code. Based on the facts presented to the Court, the Court finds that the value of the property consisting of land, hotel and all personalty therein, has declined from $21 million to $16.5 million. Consequently, Americana's secured claim has been diminished from roughly $20.2 million as of August, 1992 to $16.5 million. Therefore, in accordance with the relevant statutes and case law relied upon by this Court, Americana is entitled to a superpriority administrative expense claim in the approximate amount of $3.7 million dollars, less what they already received as payments for adequate protection during the pendency of this case.

## FACTS

The Debtor operates a hotel known as the J.F.K. Hilton located near J.F.K. Airport in Queens, New York. In June, 1989, the hotel was sold by P.C.A. Americana to the Debtor for $18.5 million dollars. In 1990, the property underwent a complete renovation that included the upgrading of guest rooms, food and beverage outlets, meeting facilities and public space. The total cost of renovation was estimated by the owner to be over $10 million dollars. Due to various factors including the recession, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 29, 1992. The Debtor has maintained continuous possession of its sole significant asset (the "Hotel"), as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

On April 10, 1992, Americana, possessor of a first mortgage on all of Debtor's real and personal property, filed a motion seeking relief from the automatic stay. Americana claimed that there was no equity in the Hotel, as it was owed roughly $20.2 million dollars and the Hotel was worth only $16.7 million dollars.

The Debtor provided the Court with testimony from Stephen Rushmore, C.R.E., M.A.I., C.H.A., a well recognized and eminent expert in the field of hotel appraisers. Mr. Rushmore wrote the original textbook for the Appraisal Institute, and had appraised approximately 4,000 hotels. Mr. Rushmore prepared a written appraisal on behalf of his company, Hospitality Valuation Services ("HVS") and testified that after his review, he estimated the Hotel to be worth, as of April 26, 1992, $30 million dollars. This appraisal was strongly supported by the Debtor at that time.

Americana presented a written appraisal from Kenneth Laventhal & Co. and testimony from Harold W. Perry, Jr., M.A.I., which indicated that the Hotel had a value as of July 1, 1992 of $16.7 million dollars. That appraiser was equally qualified as an expert.

At the end of the three day evidentiary hearing on the lift stay motion, and after reviewing the documents and evidence presented, this Court made certain findings of fact including a finding that the value of the Hotel as of April 1992 was approximately $21 million dollars:

> ... [I]n this instance I can't believe that a property that was purchased two years ago for Eighteen Million Dollars, and whether Twenty Million Dollars, or Ten Million Dollars or Five Million Dollars was put into the property, clearly the evidence that I saw indicated there is now a first class hotel operating, and that money was put in and that it was improved from the time it was purchased. There's no denial of that ... it would seem to me that it should clearly be worth at least Twenty One Million Dollars ... I don't see that this property is worth less than that is owed to the secured creditor ...

Despite the fact that the difference between the secured debt and $21 million could be deemed to leave the Debtor with minimal equity, the Court concluded that inadequate grounds existed for vacating the stay because the Hotel was necessary for an effective reorganization, and there was a possibility of reorganizing. However, because of the minimal cushion, the Debtor was ordered to make certain adequate protection payments to Americana ranging from $25,000 per month to $150,000 per month.

Ten months later, Americana made the present motion to fix the value of its secured claim against the Debtor for Debtor's reorganization plan purposes. Americana alleges that the Hotel's value has decreased from the $21 million assessment made by the Court to $16.1 million as of January, 1994, the date of Americana's updated appraisal. Based on the decrease in value of the Hotel, Americana requests a superpriority administration expense claim to the extent previously awarded adequate protection payments are insufficient to cover the decline in value.

Despite the Court's prior valuation determination, which was based in part upon the Debtor's persuasive testimony, the Debtor now opposes Americana's motion, claiming that the Court's original valuation of $21 million is not binding and that the Debtor's prior appraisal was incorrect. The Debtor now claims that the Hotel was worth approximately $10 million dollars at or around April,

1992. The Debtor has now retained a new or different appraiser, Pinnacle Advisory Group. Its principal, Daniel C. Hanrahan, II, M.A.I., testified that the value of the Hotel as of January, 1994 was approximately $11.1 million dollars. Therefore, according to the Debtor, the value of the Hotel has actually *increased* from April, 1992 if one accepts its valuation as of April 1992 to have been $10 million dollars. When this Court inquired how the Debtor could reconcile the huge discrepancy between the Debtor's original appraisal and its supporting evidence for this Court to find the Hotel's value to be at least $30 million, and its present valuation of approximately $11 million dollars, the Debtor's only response was that the original appraiser based its appraisal on erroneous projections which were not met, and therefore the original appraisal was "a mistake".

## DECISION

■ This Court's findings, that on April 26, 1992 the property in question was worth at least $21 million, is binding. The Debtor cannot now disassociate itself from the evidence the Debtor presented to the Court, and which the Court relied upon in finding that Americana was not undersecured at that time, but that there was a minimal cushion of equity. Based in no small part on the Debtor's evidence, this Court denied Americana's motion seeking relief from the automatic stay. Had the Hotel been valued at $10 million in April, 1992, as the Debtor now asserts that it should have been, then this Court would have found that the Debtors had *no* equity in the Hotel and would have conceivably been more inclined to grant Americana's motion for relief from the stay, or dismissal of the case. The Debtor's contention that their previous valuation of $30 million was based on flawed projections, and that the current valuation of $10 million for that same time period is correct, is ludicrous on its face. If the Debtor and the appraiser truly made "a mistake" rather than perpetrating a deception on this Court, then they will have to suffer the consequences, not the secured creditor. Furthermore, such assertions are barred from consideration based on the theory of judicial estoppel.

■ The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that contradicts a position successfully asserted by him in a prior legal proceeding. *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir.1993) *cert. denied*, —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1167 (4th Cir.1982); and *United Virginia Bank/Seaboard National v. B.F. Saul Real Estate Investment Trust*, 641 F.2d 185, 190 (4th Cir.1981). This doctrine has frequently been used by courts to prevent parties from asserting inconsistent positions to take unfair advantage of their adversaries and the courts:

> It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895).

Judicial estoppel has been invoked to prevent parties from " 'blowing hot and cold' in a lawsuit, or in two or more lawsuits", *Ronson Corp. v. Liquifin Aktiengesellschaft, Liquigas*, 375 F.Supp. 628, 630 (S.D.N.Y.1974), or from " 'playing fast and loose' with the courts." *Allen v. Zurich*, 667 F.2d at 1166.

■ Judicial estoppel is also designed to protect "the sanctity of the oath and the integrity of the judicial process." *Bates v. Long Island*, 997 F.2d at 1037. The judicial system is protected by judicial estoppel in the following two ways:

> First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

*Id.* at 1038 (footnotes omitted). The United States Court of Appeals for the Second Circuit in *Bates v. Long Island,* 997 F.2d at 1038 has recently set forth the elements of judicial estoppel as follows:

> By focusing on the rationales behind judicial estoppel, the elements of the doctrine become clear. First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner.

In this case, judicial estoppel is applicable. The Court made a finding that the Hotel was worth $21 million, which finding played a part in its decision on the motion to vacate the stay. The Debtors' current position is grossly inconsistent with its prior position, to the point where the Debtor's current argument strains credibility. The Debtor cannot now assert that the value of $21 million was incorrect, after vigorously urging this Court to find a value of over $30 million dollars.

Even if the Court were to agree to revisit its findings, the Court would still have placed the value of the Hotel at around $21 million as a going concern. After the original valuation hearing, the Court took note of the fact that in 1989, the Debtor purchased the property at arms-length for $18.5 million dollars and proceeded to improve the Hotel by injecting over $10 million dollars into improvements prior to the filing of Debtor's petition for relief. The Debtor's total cost to the date of the petition was approximately $28.5 million dollars. The valuation of the Hotel at $21 million was wholly justified.

From the two current appraisals, it appears that the Hotel is presently worth less than Debtor's original purchase price. However, this Court cannot accept the Debtor's valuation of $11.1 million dollars, which would be less than half of its cost, and almost one-third of what it represented its value to be as of July, 1992, approximately 1½ years prior. This Court finds that there is sufficient evidence to support a current valuation of the subject property as a going concern at $16.5 million.

As for the allowance of a superpriority administrative claim by Americana, 11 U.S.C. § 507(b) of the Bankruptcy Code provides:

> If the Trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and, if, notwithstanding such protection, such creditor has a claim allowable under section (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

This section must be read in combination with Section 507(a)(1) and Section 503(b) which state in relevant part:

> The following expenses and claims have priority in the following order: "... (1) First,

administrative expenses allowed under section 503(b) of this title." 11 U.S.C. Sec. 507(a)(1). "After notice and a hearing, there shall be allowed administrative expenses ... including ... the actual and necessary costs and expenses of preserving the estate ..." 11 U.S.C. § 503(b).

The purpose behind Section 507(b) of the Bankruptcy Code is "to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate" by affording first priority to administrative expenses. *Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co., Inc.),* 991 F.2d 682, 685 (11th Cir.1993), *amended, reh'g, en banc, denied,* 4 F.3d 940 (11th Cir. 1993) *and cert. denied,* —— U.S. ——, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994) (quoting *In re Pulaski Highway Express, Inc.,* 57 B.R. 502, 505 (Bankr.M.D.Tenn.1986)).

Section 507(b) of the Bankruptcy Code "provides that when adequate protection has been given to a secured creditor and later proves to be inadequate, the creditor becomes entitled to a superpriority administra-

tive expense claim to the extent that the proffered adequate protection was insufficient." *Carpet Ctr. Leasing Co.*, 991 F.2d at 685.

Adequate protection is a method of maintaining a creditor's interest in secured collateral subject to post-petition use by the debtor. "Where adequate protection becomes inadequate or otherwise fails and the use nonetheless continues, Section 507(b) comes into play by covering the creditor's unprotected interest by according it priority administrative expense status." *In re Mutschler*, 45 B.R. 494, 496 (Bankr.D.N.D.1984).

■ In order for a claim to have superpriority status under Section 507(b), a creditor must satisfy the following requirements:

(1) the claim must be allowable as an administrative claim under Section 503;

(2) the Court must expressly award adequate protection to the creditor; and

(3) the adequate protection payments must later prove to be inadequate.

*In re California Devices, Inc.*, 126 B.R. 82, 84 (Bankr.N.D.Cal.1991).

Thus, the first question that must be addressed is whether the claim of Americana is allowable as an administrative claim under Section 503(b) of the Code. Administrative expenses under Section 503(b) include the "actual, necessary costs and expenses of preserving the estate." Since the Debtor's use of the Hotel and its proceeds went to maintain the property and operate the business, it was an essential aspect of its efforts to reorganize. The use of the collateral was an actual and necessary cost of preserving the estate. Therefore, the claim of Americana is allowable as an administrative claim under Section 503(b).

Next, we must determine whether adequate protection was provided which has later proven to be inadequate. The Court awarded Americana adequate protection based on the Court's $21 million valuation of the Hotel. The Court entered its first adequate protection order in November 1992 pursuant to which Americana received $25,000 per month from the Debtor through February 1993. The Court increased these pay-

ments to $32,917 per month in March 1993 and $150,000 per month in June 1993.

The adequate protection payments awarded by the Court has proven to be inadequate. This Court finds that the valuation of the Hotel for purposes of confirmation is $16.5 million, which is $4.5 million *less* than the $21 million valuation at the lift stay hearing. However, Americana is not entitled to a Section 507(b) claim for the entire $4.5 million because at the time the motion to vacate the stay was heard, Americana was believed to be minimally oversecured. Americana is entitled to a claim under Section 507(b) of the Bankruptcy Code for the difference between the amount of its secured claim at the time of the hearing on the motion to vacate the stay $20.2 million and the Hotel's current value of its collateral, less the amount of adequate protection payments it has received. This amount compensates Americana for the decrease in the value of its secured claim resulting from the Court's denial of its motion to vacate the automatic stay.

## CONCLUSION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Americana's motion for a superpriority administration claim is granted to the extent that the adequate protection payments made by the Debtor during the pendency of this case are insufficient to cover the decrease in the value of Americana's secured claim from $20.2 million to $16.5 million.

Settle an order in accordance with this decision.