**In re James K. MENDEZ and Laura Mendez, Debtors.**

No. 99–07794–3P3.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 9, 2001.

Raye Curry, for creditor.

Stacy Eckert, Orange City, FL, for debtor.

Mamie L. Davis, Jacksonville, FL, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON GENERAL MOTORS ACCEPTANCE CORPORATION'S REQUEST FOR PAYMENT OF ADMINISTRATIVE CLAIM

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon a Request for Payment of Administrative Claim filed by General Motors Acceptance Corporation. The Court heard oral arguments regarding the validity of the Administrative Claim on October 25, 2000 and October 31, 2000. Upon the evidence presented and submissions by the parties, the Court enters the following Findings of Fact and Conclusions of Law.

#### FINDINGS OF FACT

1. On July 25, 1998, General Motors Acceptance Corporation ("GMAC") and James and Laura Mendez ("Debtors") entered into a Retail Installment Contract ("Contract") pursuant to which GMAC financed the purchase of a 1997 Geo Metro vehicle. The Contract provided for a loan of the principal sum of $6,200.51 to Debtors by GMAC. In return, Debtors granted GMAC a security interest in the vehicle. GMAC's lien on the vehicle was subsequently perfected, as evidenced by a notation on the vehicle's Certificate of Title.

2. On October 12, 1999, Debtors filed for bankruptcy under Chapter 7 of the Bankruptcy Code. (Doc. 1.) GMAC subsequently filed a Motion for Relief

from Stay in Debtors' bankruptcy case on October 27, 1999. (Doc. 9.)

3. On December 13, 1999, Debtors voluntarily converted their case to Chapter 13. (Doc. 25.) Upon conversion of the case, GMAC and Debtors entered into a stipulation for adequate protection. The Court entered an Order Granting Adequate Protection ("Order") to GMAC on December 30, 1999. (Doc. 46.)

4. The Order required Debtors to "comply with all requirements of the Retail Installment Contract, including the maintenance of insurance on the vehicle." (Doc. 46, ¶ 11.)

5. Debtors' original Chapter 13 Plan provided for payment to GMAC for its secured claim at the rate of $113.71 per month. (Doc. 40.) Debtors' Second Amended Chapter 13 Plan altered the payment structure to $113.71 for months 1–7 and $196.94 for months 8–36. (Doc. 61.) Finally, Debtors' Third Amended Plan called for the surrender of the vehicle to GMAC, in complete satisfaction of its claim. (Doc. 63.)

6. At the hearing held on October 31, 2000, Gerry Thomas of GMAC testified that on or about January 24, 2000, Debtors supplied GMAC with proof that the vehicle was insured with comprehensive physical damage insurance coverage provided by Banker's Insurance Company ("Banker's"). GMAC verified this information by contacting Banker's directly.

7. Mr. Thomas also testified that in September 2000, GMAC received notice that the vehicle was being stored at a towing company and would be sold for payment of the towing and storage fees unless the vehicle was redeemed. GMAC paid the towing and storage fees and retrieved the vehicle.

8. Upon recovering the vehicle, GMAC discovered that the automobile had been completely destroyed, leaving only the "salvage" of the vehicle. Mr. Thomas testified that Debtors had not informed GMAC of the destruction of the vehicle prior to GMAC's discovery of the totaled automobile.

9. Additionally, Mr. Thomas testified that when he contacted Banker's to file a claim of loss, he was told that the insurance coverage had lapsed. Neither Banker's nor Debtors had previously mentioned the insurance lapse to GMAC.

10. GMAC subsequently contacted Debtors regarding their lack of insurance coverage. Debtors informed GMAC that they had changed their insurance carrier to Aries Insurance Company ("Aries"). GMAC had not received notice of the change from either Debtors or Aries.

11. When GMAC pursued a claim for the loss of the vehicle, Aries informed GMAC that Debtors maintained personal liability insurance coverage and not comprehensive collision insurance coverage on the vehicle. Furthermore, GMAC was not listed as a lienholder on the insurance policy. GMAC's claim for loss of the vehicle was consequently denied.

12. Debtor, Laura Mendez, testified that she discovered the lack of comprehensive insurance coverage only after the accident, when Aries denied Debtors' claim. She explained that she believed that she had acquired full comprehensive coverage on the vehicle.

13. According to Mr. Thomas, GMAC is currently owed $6,155.98, which includes a fee of $750.00 for towing expenses. However, this figure will be adjusted once GMAC sells the salvage of the vehicle, which it estimates to be between $300 to $500.

14. On October 18, 2000, GMAC filed an Objection to Confirmation of Debtor's Third Amended Chapter 13 Plan (Doc. 66) along with an Administrative Claim (Doc. 67) and a Request for Payment of Administrative Claim

(Doc. 68) based upon the failure of its adequate protection order.

## CONCLUSIONS OF LAW

The administration of a bankruptcy case often requires courts to execute a delicate balancing of the debtor's need to utilize collateral with the creditor's right to maintain the value of its security. In order to alleviate this tension, the Bankruptcy Code fashioned § 361(1) which provides the debtor with access to the collateral while offering the creditor "adequate protection" in the form of periodic cash payments. The creditor continues to maintain a security interest in the collateral if the debtor defaults upon the order of adequate protection.

Since adequate protection orders are merely predictions of the collateral's value, they may occasionally fail to fully protect a creditor's interest. This may occur where the imposition of the automatic stay causes the value of the secured creditor's collateral to decline leaving the creditor with little or no compensation for the use of its property. *See Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co.),* 991 F.2d 682, 685 (11th Cir.1993). Section 507(b) rectifies the inherent hazards of the adequate protection order by enabling the injured creditor to file a superpriority claim[1] for its deficiency ahead of all other administrative claimants. Specifically, the statute provides,

> If the trustee ... provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of such action against such property ... then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

11 U.S.C. § 507(b) (West 2001). Essentially, § 507(b) grants a secured creditor a first priority claim to the extent that the debtor's use of the collateral diminishes its value. *See In re Blackwood,* 153 F.3d 61, 68 (2d Cir.1998).

■ In order to receive superpriority status, a creditor must meet three threshold requirements. First, the claim must be allowable as an administrative claim pursuant to § 503(b). Second, the court must expressly award adequate protection to the creditor. Third, the adequate protection payments must later prove inadequate. *In re J.F.K. Acquisitions Group,* 166 B.R. 207, 212 (Bankr.E.D.N.Y.1994) (citing *In re Cal. Devices, Inc.,* 126 B.R. 82, 84 (Bankr.N.D.Cal.1991)).

■ The Court must first determine if GMAC's claim is an administrative expense pursuant to § 503(b). The treatment of a failed adequate protection order as a superpriority administrative claim under § 503(b) is justified on the basis of the collateral's benefit to the estate. Where the debtor bargains for post-petition use of the creditor's property and promises adequate protection in return, such use provides new value to the bankruptcy estate. The creditor's expense in making the collateral available is an actual and necessary cost of preserving the bankruptcy estate under § 503(b). *In re Carpet Ctr. Leasing Co.,* 991 F.2d at 687. In this case, GMAC clearly provided a benefit to the Debtors' estate by permitting Debtors to continue using the vehicle. GMAC's expense squarely fits *Carpet Ctr. Leasing Co.'s* definition of an "actual and necessary cost of preserving the estate." Consequently, GMAC has satisfied the first prong and is entitled to an allowable administrative claim under § 503(b).

Next, the creditor must show that adequate protection was provided. This

---

1. " 'Superpriority' is a term not defined in the Bankruptcy Code. It is used to describe a claim which, under applicable bankruptcy law and pursuant to court order, is to be paid ahead of some or all administrative expenses, and possibly ahead of secured creditors." *In re Energy Coop., Inc.,* 55 B.R. 957, 963 n. 20 (Bankr.N.D.Ill.1985).

Court entered an order granting adequate protection to GMAC in Debtors' bankruptcy case on December 30, 1999. The entry of an Order Granting Adequate Protection demonstrates that adequate protection was provided to GMAC.

Lastly, the Court must evaluate whether the adequate protection provided was insufficient. Although the Court initially awarded GMAC adequate protection payments, Debtors' Third Amended Plan provided for the return of the vehicle in lieu of monthly payments. Upon return, however, the surrendered collateral was completely destroyed. The value of the collateral has almost entirely vanished making the adequate protection provided insufficient to protect GMAC's interest in the collateral. Accordingly, the Court finds that GMAC has fulfilled the preliminary requirements needed to sustain a superpriority claim under § 507(b).

▇▇▇ Additionally, the creditor must show that the loss was caused solely by the imposition of the automatic stay. *In re Second Timmon Hotel,* 91 B.R. 985, 988 (Bankr.M.D.Fla.1988). "[N]ot every decline in value must be recompensed, only those which, but for the stay, could ... be prevented or mitigated." *Bankers Life Ins. Co. of Neb. v. Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bankr.D.Utah 1981). Consequently, losses that would have occurred despite the interference of the bankruptcy case are not entitled to protection under § 507(b). In this case, GMAC originally filed a motion for relief from stay. The entry of an adequate protection order, however, halted GMAC's ability to repossess the collateral, thereby exposing the vehicle to the risk of destruction. The loss was therefore attributable, at least in part, to the imposition of the automatic stay.

▇▇▇ Since the creditor's loss must be triggered *solely* by the imposition of the stay, it follows that a creditor's right to a superpriority claim may be defeated if the creditor has acquiesced in the harm to the collateral. *See In re Second Timmon Hotel,* 91 B.R. at 985; *see also In re Falwell Excavating Co.,* 47 B.R. 217 (Bankr. W.D.Va.1985). Thus, courts have denied superpriority status where creditors have not been vigilant in pursuing their rights under the adequate protection order. *See In re Second Timmon Hotel,* 91 B.R. at 985; *see also In re Falwell Excavating Co.,* 47 B.R. at 219. In *Second Timmon Hotel,* this Court denied § 507(b) superpriority status to a creditor for its failure to timely move for relief from the stay in order to foreclose upon the property or to file an affidavit of default once the debtor had missed a payment. 91 B.R. at 988. The Court held that, "[u]nder the circumstances, it would be inappropriate to provide [the creditor] with a superpriority claim for losses occasioned by its own conduct." *Id.* Thus, where a creditor is at fault for damage to its collateral, a court will not reinstate rights that the creditor has not adequately guarded.

▇▇▇ Debtors allege that GMAC did not take any steps to protect its collateral when it learned that Debtors did not maintain comprehensive collision insurance coverage as required by the adequate protection order. Specifically, Debtors maintain that GMAC's failure to file an affidavit of default resulted in the loss of the collateral. (Debtors' Br. at 2).

This Court disagrees with Debtors' contention. GMAC's failure to file an affidavit of default did not cause harm to the collateral. Even if the affidavit of default had been filed, it would not have protected GMAC from the decline in value of its collateral. The collateral had already been destroyed when GMAC discovered that Debtors lacked comprehensive insurance coverage. Thus, the filing of an affidavit of default would not have improved GMAC's situation. Given the fact that the vehicle was virtually worthless, it would not have been prudent for GMAC to relinquish all rights against Debtors by repossessing the collateral through an affidavit of default.

Moreover, the Court finds that GMAC did not delay when it learned of Debtors' default. Upon retrieval of the destroyed vehicle, GMAC promptly contacted Debtors and the insurance agencies. Once it discovered that insurance coverage was lacking, GMAC quickly filed an objection to confirmation of Debtors' plan as well as an administrative claim against the estate. Thus, the evidence clearly indicates GMAC acted immediately to protect its interests and did not acquiesce in the harm to the collateral.

In the factually similar case of *In re Callister*, a Chapter 11 bankruptcy case, the bankruptcy court held that a creditor was entitled to superpriority status where the debtor had inadvertently failed to insure collateral which was destroyed in a fire. *In re Callister*, 15 B.R. 521 (Bankr. D.Utah 1981). The creditor in *Callister* failed to ascertain if the debtor had purchased insurance and also did not file an affidavit of default. Nevertheless, the court found that "a degree of reliance on stipulations was warranted" and that "the interest of administrative claimants ... was the [debtor's] stewardship." *Id.* at 531.

In this case, Debtors provided proof of insurance coverage to GMAC, which GMAC independently verified with Banker's, unlike the creditor in *Callister*. GMAC therefore acted diligently in seeing that insurance was obtained. Although cases such as *Second Timmon Hotel* and *Falwell Excavating Co.* have held that a creditor must be vigilant in seeing that adequate protection payments are met, there is no case law suggesting that a creditor must be equally meticulous in determining whether insurance is maintained on the collateral. While a creditor can easily ascertain payments by the trustee, regular verification of insurance is a far more burdensome task. In fact, the debtor is in a superior position to discover any lapses or discrepancies in insurance coverage since the insurer maintains frequent contact with the insured, rather than with the loss payee. *See Callister*, 15 B.R. at 531 ("If this risk were allocated between debtor and Rand outside bankruptcy, naturally, it would be borne by debtor, who, as between the two innocent parties, was in a better position to prevent the inadvertence."). In contrast to Debtors' position, the Court finds that GMAC complied with its duties as a creditor by acting swiftly and responsibly to protect its interest in the collateral.

### CONCLUSION

GMAC has shown that the imposition of the stay has caused a decline in the value of its collateral. Accordingly, GMAC's Request for Payment of an Administrative Claim is granted and GMAC is allowed a superpriority administrative claim in the amount of $6,155.98. This figure shall be discounted by any amount that GMAC collects from the sale of the salvage of the vehicle. A separate Order will be entered in accordance with these Findings of Fact and Conclusions of Law.