**In re Elmer Eugene ROSE, Debtor.**

**No. 03–52259.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 11, 2006.

Crystal I. Zellar, Zanesville, OH, for Debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on May 3, 2006, upon the Motion for Allowance of an Administrative Expense (Doc. 60) filed on behalf of First Bank of Ohio, Tiffin ("the Bank"), and the Debtor's Response thereto (Doc. 61). Present at the hearing were Michael Bornstein representing the Bank and Crystal Zellar representing the Debtor. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

After the parties presented legal argument and the Bank presented testimony in support of its Motion, the Court took the matter under advisement, ordered the parties to file briefs in support of their positions, and ruled that in the event the Court found the Bank's Motion well-taken under the law, a hearing would be scheduled for presentation of evidence by Debtor regarding the condition and the value of the vehicle.

The Bank seeks an allowance of an administrative claim under 11 U.S.C. § 503 [1]

---

1. In the Bank's Memorandum of Law Regarding First Bank's Request for Allowance of Administrative Claim (Doc. 68), the Bank claims entitlement to an administrative claim

in the amount of $2,839.24 representing the value of the Bank's secured claim less payments already received under the Plan. Debtor objects to the Bank's motion on the basis that 1) the Bank's requested claim does not fall within the parameters of 11 U.S.C. § 503(b)(3) and 2) the Bank failed to liquidate its collateral in a commercially reasonable fashion, thereby precluding the Bank from any deficiency claim.

## I. *Findings of Fact*

Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on February 21, 2003, at which time the Bank held a lien on Debtor's 1995 Chevrolet Monte Carlo. The Bank objected to the confirmation of Debtor's Chapter 13 Plan with an Objection to Valuation of Collateral (Doc. 12) on the basis that Debtor had not properly valued vehicle. The parties thereafter reached an agreement on the value of the 1995 Chevrolet Monte Carlo and the Bank was allowed a secured claim in the amount of $3,047.00 pursuant to an Agreed Order (Doc. 21). The Debtor's proposed Chapter 13 was confirmed on May 21, 2003 (Doc. 19).

On October 15, 2003, the Bank filed a Motion for Relief from Stay (Doc. 29) on the basis that the Bank was not receiving payments for the car due to Debtor's failure to make timely monthly payments to the Chapter 13 Trustee pursuant to the confirmed Plan. In December of 2003, an Agreed Order on Motion for Relief from Stay (Doc. 36) was entered whereby the parties stipulated that Debtor would keep the car on the promise of continued payments into the Plan. However, Debtor again defaulted on Plan payments to the Chapter 13 Trustee, and thereafter, on April 1, 2005, the Court granted the Bank

relief from the automatic stay to repossess the collateral (Doc. 46).

When the Bank sought to recover the car in May, 2005, the Bank found the car had been stripped of all valuable parts. According to the Bank, Debtor admitted he allowed a friend to strip parts from the vehicle. Pictures of the car and the repossession agent's report entered into evidence confirmed the car's condition: among other things, the tires were missing, the motor was damaged (blown), the vehicle's interior had vanished, and there were no seats or carpet. The Bank determined that the costs of repossessing, transporting the vehicle to an auction site, and selling the vehicle would have been in excess of any amount the Bank was likely to recover upon selling the vehicle. The Bank estimates the salvage value of the vehicle was $100 at the time the Bank last inspected the collateral. Towing the car would cost between $200 and $250. In addition, the Bank would have incurred other charges, such as storage and auctioneer fees, to repossess and sell the vehicle. Therefore, the Bank chose not to take possession of the car and instead filed its Motion for Allowance of Administrative Expense.

Because (a) the Debtor failed to pay the agreed adequate protection, and (b) Debtor allowed the car to be stripped thereby eliminating any significant value, the Bank reasoned that it is entitled to payment of the remaining balance of its secured claim as an administrative claim. The Bank calculates this amount as the difference in the amount of its original secured claim ($3,047 less payments $207.76) less the value of the collateral on resale ($0.00), yielding an amount of $2,839.24.

under § 503 and § 507(b). However, the Bank did not seek relief under § 507(b) in the Bank's initial Motion for Allowance of an

Administrative Expense and accordingly, the Court will not consider the effect of that provision further.

Counsel for the Debtor urges the Court to find that the Bank's claim should not be classified as an administrative claim under 11 U.S.C. § 503. Furthermore, Debtor argues the Bank's deficiency claim must fail because the collateral was not liquidated as required by Ohio Revised Code § 1309.601, *et seq.*, which govern a creditor's right to a deficiency claim.

## II. *Conclusions of Law*

### A. Administrative Claim

■ 11 U.S.C. § 503 describes allowable administrative claims under the Bankruptcy Code. Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 503(b)(1)(A) stated in pertinent part[2]:

(b) After notice and a hearing, there shall be allowed administrative expenses, . . . including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . .

The word "including" in § 503(b) is not a word of limitation. 11 U.S.C. § 102(3). It is well established the subsections of 503(b) are examples of what may qualify as administrative expenses, but do not limit the Court in deciding what may be allowed as an administrative expense under § 503(b). *Younger v. United States (In re Younger)*, 165 B.R. 965, 968 (D.Ga.1994) ("Although certain types of administrative expenses are listed in the statute, the designations contained in section 503(b) are not exhaustive since use of the word 'including' in the statute is not limiting."); *In re N.P. Mining Co.*, 963 F.2d 1449, 1452 (11th Cir.1992) ("It is clear from the face of the statute, however, that expenses not explicitly listed in section 503(b) can receive administrative-expense status in one of two ways, either as a nonlisted 'actual, necessary' expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general."); 4 L. King, *Collier on Bankruptcy* P 503.05[1], at 503–23 (15th rev. ed.2006) (explaining the term *including* is not a limitation and "[t]he court may determine that additional types of claims are expenses that should be accorded administrative priority in a particular case."). Thus, administrative claims may be determined on a case-by-case basis. *In re Merry–Go–Round Enters., Inc.*, 180 F.3d 149, 156 (4th Cir.1999).

■ For a cost to be actual and necessary to a bankruptcy estate and qualify as an administrative expense under section 503(b)(1)(A), the expense must 1) arise from a post-petition transaction between the creditor and the debtor, and 2) confer a direct and significant benefit on the estate. *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997).

Many cases relevant to the issue before this Court discuss whether an expense qualifies as a benefit to the estate under § 503(b) in the context of whether a creditor's claim may be granted superpriority status under § 507(b) of the Bankruptcy Code. *See generally Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co.)*, 991 F.2d 682 (11th Cir.1993); *In re Mendez*, 259 B.R. 754 (Bankr.D.Fla.2001); *Huntington Acceptance Co. v. Hanna (In re Hanna)*, No. 95–23944, 1997 WL 755144, 1997 Bankr.LEXIS 1937 (Bankr. D.Pa. Dec.3, 1997). Though the Court is

---

**2.** The provisions of BAPCPA became effective October 17, 2005; this case was filed in 2003 and therefore, is not governed by the amendments to the Bankruptcy Code pursuant to BAPCPA.

not examining the Bank's claim under § 507(b), those cases are illustrative in examining the circumstances under which a claim may fall under § 503(b).

In *In re Carpet Ctr. Leasing Co.*, the debtor actively bargained for the use of collateral after filing bankruptcy under Chapter 11, agreeing to pay the creditor adequate protection payments. 991 F.2d at 684, 686–87. The court observed that a debtor would presumptively return collateral and dispense with providing adequate protection payments if collateral was not necessary to preserve the estate. *Id.* at 686 (quoting *In re Mutschler*, 45 B.R. 494, 496 (Bankr.D.N.D.1984)). The court explained that the use of the creditor's property can provide new value to the bankruptcy estate when the debtor bargains for and retains post-petition use of the collateral; in general, a debtor pays for the beneficial use of collateral through the adequate protection payments. *Id.* at 687. As expressed by the 11th Circuit Court of Appeals, "The negotiation for continued possession of [collateral] in return for adequate protection is a post-petition transaction providing new value to the bankruptcy estate." *Id.* at 687. Thus, adequate protection can qualify as an actual and necessary cost of preserving the bankruptcy estate under section 503(b). *In re Carpet Ctr. Leasing Co.*, 991 F.2d at 687; *In re Mendez*, 259 B.R. at 757 (citing *In re Carpet Ctr. Leasing Co.*, finding that the debtor's estate was benefitted by continued use of a car).

In *In re Hanna*, a debtor used a creditor's collateral for such purposes as transportation to work and for transporting his three children and wife. 1997 WL 755144 at *4, 1997 Bankr.LEXIS 1937 at *12. The court concluded "[t] he use of the car benefitted the chapter 13 estate in that it was used by Debtors to preserve their lives and livelihood. Accordingly, Debtor's continued possession and use of the vehicle contributed to the preservation of the estate." *Id.* at *4, 1997 Bankr.LEXIS 1937 at *13. *See also In re Sunarhauserman, Inc.*, 126 F.3d at 816.

Nonetheless, "[s]ince there is a general presumption in bankruptcy cases that all of a debtor's limited resources will be equally distributed among creditors, § 503 must be narrowly construed." *In re Merry–Go–Round Enters., Inc.*, 180 F.3d at 157. It must be recognized that "[not] every decline in value must be recompensed, only those which, but for the stay, could … be prevented or mitigated." *In re Mendez*, 259 B.R. at *758 (quoting *In re Alyucan Interstate Corp.*, 12 B.R. 803, 809 (Bankr.D.Utah 1981)). Adequate protection payments usually suffice as the means by which secured creditors are compensated for diminution of value of the collateral used by the estate. *In re Cheatham*, 91 B.R. 382, 387 (D.N.C.1988) ("… the purpose of adequate protection is to protect the creditor's interest in collateral during the pendency of the automatic stay."). In this sense, responsibility lies with the creditor to ensure that the payments received under the plan are commensurate with the depreciation of the asset. *Id.* at 387 ("In situations involving the determination of adequate protection by the consent of the parties, the parties themselves, and especially the creditor who is in the dominant position, assumes the risk that adequate protection will later turn out to be 'inadequate.' ").

Similar to the debtor in *In re Carpet Ctr. Leasing Co.*, Debtor in the instant case bargained for the post-petition use of the vehicle. When the Bank filed a Motion for Relief From Stay, Debtor negotiated with the Bank to keep the vehicle as evidenced by the parties' agreement to the entry of an Agreed Order that allowed Debtor to keep the vehicle in return for

Debtor's promise to pay monthly adequate protection payments to the Bank through Debtor's Plan. Debtor would not have gone through the process of actively seeking to retain the vehicle if the car was not necessary and beneficial to the estate. Debtor presumably used the car for transportation to work and for other purposes necessary to his life and livelihood, as did the debtor in *In re Hanna*. Therefore, the post-petition use of the vehicle by Debtor can appropriately be categorized as a benefit to the estate and the adequate protection appropriately categorized as an actual and necessary expense of the estate under section 503(b).

Additionally, in the instant case, the collateral's extreme diminution in value was not the result of natural depreciation or another foreseeable circumstance, but allegedly due to Debtor's affirmative actions that contributed to the vehicle's resulting condition.[3] If these allegations are proven true, it would not be equitable for Debtor to be unjustly enriched by the use and possession of the car while the vehicle's value is essentially destroyed at the expense of the Bank who is stymied by the automatic stay from protecting its interests. The oft cited rationale for awarding priority status to qualifying creditors under section 503 is to provide an incentive to creditors to do business with a debtor who has filed bankruptcy. *In re Merry–Go–Round Enters., Inc.*, 180 F.3d at 157. If debtors were permitted to essentially destroy a creditor's property interest, as claimed here, while not providing adequate protection and at no risk, no prudent creditor would aid debtors during bankruptcy.

The Bank has met the requirements of § 503 and accordingly, the Court finds that in this case, the Bank's loss in the form of the car's value may be an allowable administrative expense under section 503(b).

## B. Deficiency Claim

 O.R.C. § 1309.601(A)(1) provides that upon default, the secured party has the options to "reduce a claim to judgment, foreclose, or otherwise enforce the claim, [or] security interest . . . by any available judicial procedure." If, on the other hand, a secured party elects to take possession or exercises control over the collateral pursuant to sections 1309.104–107 of the Ohio Revised Code, the secured party assumes the rights and duties outlined in O.R.C. § 1309.207. O.R.C. § 1309.601(B). O.R.C. § 1309.601(C) states that the creditor's rights under these options "are cumulative and may be exercised simultaneously." The import of these various provisions is that the remedies of the secured party upon default of payments by a debtor is not limited to the repossession and liquidation of collateral.

Debtor asserts that the Bank should have determined the value of the vehicle and any deficiency balance owed by Debtor for the car by selling the car at a commercially reasonable sale after repossession. Because the Bank did not hold a commercially sale upon notice to Debtor of such sale, Debtor argues that the Bank is prohibited from pursuing collection of the deficiency and therefore, is not entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(3) for any such deficiency. However, this assertion ignores O.R.C § 1309.601, which states secured creditors have multiple remedies when a debtor defaults on a secured loan and are not necessarily required to repossess and sell collat-

---

**3.** Debtor maintains that the vehicle's condition is not as poor as alleged by the Bank; further testimony will be taken on this issue.

eral to act in a commercially reasonable manner.

In *Merchs. Bank & Trust Co. v. Kelly*, No. CA2003-09-229, 2004 WL 1662288 (Ohio Ct.App. July 26, 2004), the plaintiff similarly claimed the defendant did not act reasonably when the defendant elected not to repossess the vehicle, but rather brought a claim seeking payment for the unpaid balance on the note owed to the defendant. *Id.* at *7–8. The defendant chose to forego repossession of the collateral after concluding the cost to repair the collateral would have exceeded the collateral's value. *Id.* at *8. Instead, the defendant decided to enforce the note against plaintiff, filing suit against her for the amount owed. *Id.* The plaintiff asserted the defendant did not act in a commercially reasonable manner because the defendant could have repossessed the car. *Id.* at *7. In upholding summary judgment for the defendant, the court cited O.R.C. § 1309.601(A), (B), and (C), finding that the defendant's decision to enforce the note rather than recover the automobile was not "commercially unreasonable." *Id.* at *8. In reaching its decision, the court explicitly noted that the defendant had the alternatives provided in O.R.C. § 1309.601(A), (B), and (C). *Id.* at *7–8. Accordingly, the defendant was not required to repossess the vehicle. In addition, the court noted the plaintiff did not provide evidence that the cost to repair the car would be less than the car's value. *Id.* at *8. Thus, the plaintiff's claim that the defendant acted unreasonably by failing to repossess the car was unsustainable. *Id.*

Likewise, the Bank in this case had the option of bringing forth a claim under O.R.C. § 1309.601 to recover the outstanding debt owed instead of repossessing the vehicle. The Bank is not required to repossess and sell the vehicle as a condition precedent to pressing a claim for the amount owed by Debtor. The Bank elected to seek payment for the unpaid balance owed to the Bank instead of repossessing the car because the Bank determined the cost for recovering and selling the car would exceed any amount the Bank would receive upon sale of the car. Because O.R.C. § 1309.601 does not insist a secured party take possession of collateral after default, Debtor's claim the Bank did not comply with the Ohio Revised Code is untenable.

Furthermore, even if the Bank had repossessed the vehicle, it does not follow the Bank would have been required to sell the vehicle before seeking a deficiency judgment. In *General Credit Co. v. Stapelton*, No. 15344, 1992 WL 126118, 1992 Ohio App. LEXIS 2967 (Ohio Ct.App. June 3, 1992), the court addressed the issue of whether a creditor's possession of collateral meant that creditors had retained the collateral in satisfaction of the debt and was therefore precluded from obtaining judgment on the note. *Id.* at *2, 1992 Ohio App. LEXIS 2967 at *4. In *General Credit Co.*, the creditor repossessed the debtor's vehicle and the debtor claimed the creditors had retained the car in full satisfaction of the debt when the creditor failed to sell the vehicle. *Id.* The court first pointed out the secured party had the right to repossess the collateral as well as reduce his claim to judgment. *Id.* The court then acknowledged that the plaintiff's rights and remedies were cumulative, *id.* at *2, 1992 Ohio App. LEXIS 2967 at *5, and that a secured party could commence an action to recover the secured claim before selling the collateral. *Id.* at *2, 1992 Ohio App. LEXIS 2967 at *4. Retention of collateral is not necessarily an election to keep the collateral in satisfaction of the debt. *Id.* at *2, 1992 Ohio App. LEXIS 2967 at *4–5.

The court did go on to assert that if the creditor took possession of collateral, the creditor must "sell or otherwise dispose of the collateral in a commercially reasonable manner" prior to seeking a judgment. *Id.* at *2, 1992 Ohio App. LEXIS 2967 at *5. However, the court then recognized if a creditor did repossess and retain the collateral, a deficiency judgment could be obtained if the creditor gave credit for the value of the collateral from the total amount owed. *Id.* Thus, the creditor was not allowed to keep the car and still recover the full amount owed by the debtor; essentially, the outstanding balance was to be reduced by the value of the car. *Id.* This approach reconciles the goal of protecting the debtor while also protecting a secured creditor's right to recoup the full amount of the creditor's claim.

 Consequently, *General Credit Co.* shows that this Debtor's theory is incorrect. Though selling the vehicle may be the most desirable way to determine a deficiency judgment, the Ohio Revised Code does not mandate this process in every situation. It requires only that the creditor act in a commercially reasonable fashion under the circumstances. *General Credit Co.* demonstrates that the collateral's value may be established by other means so as to compute how much the debtor still owes to the creditor if a creditor elects to retain collateral. This concept is of special importance in this case, where based on evidence presented thus far, the value of Debtor's vehicle is unlikely to exceed the Bank's potential expenses of repossession and sale of the car. It is illogical to command the Bank to sell an asset at a loss and expend more money in order to make a claim, and the Court finds that the Bank's decision to forego repossession and sale of Debtor's allegedly severely impaired car is not per se commercially unreasonable.

### III. *Conclusion*

In light of the foregoing, the Court finds the Bank's motion is well taken under the law. A hearing shall be held on **September 6, 2006, at 2:00 p.m.** in Courtroom C, Fifth Floor, United States Bankruptcy Court, 170 N. High St., Columbus, OH 43215 for presentation of evidence by Debtor regarding the condition and value of the vehicle at the time the Bank sought to repossess the vehicle, which will bear on the commercially reasonableness of the Bank's actions.

**IT IS SO ORDERED.**